**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE:                                                                    Chapter 11

Nick Mavrakis,                                              CASE NO.: 1-20-41456-cec

          Debtor.

**DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11**

**BACKGROUND FOR CASES FILED UNDER SUBCHAPTER V**

    **A. Description and History of the Debtor's Business**

The Debtor is individual residing at 2121 21 Street, Astoria, NY 11105.
The Action stems from a dramatic decline in the value of the taxi medallions, which constituted the collateral of the Mega Funding, Corp., loan. This decline resulted from the proliferation of mobile applications such as Uber and Lift and the subsequent refusal of Mega Funding, Corp., as well as many other medallion lenders to extend, refinance or modify the loan guaranteed by the Debtor at or before the balloon maturity date without the contribution of additional collateral. Furthermore, the declining market resulted in a gradual reduction in the amount of the leasing payment paid by the management company leasing the medallion. Said income was insufficient to cover the monthly financing payment to Mega Funding, Corp. Due to the inevitable default triggered by partial note payments, medallion number #9M96, was repossessed on November 17, 2018.
To negotiate an agreement as to an amount of an unsecured deficiency amount and the repayment terms thereof with the Lender, and in resolution of the personal guarantee, on January 8, 2019, Mr. Mavrakis filed for Chapter 11 Bankruptcy protection." Due to the lender's continued refusal to credit the contribution of the co-debtor of Mr. Mavrakis, as well as, upon

1

information and belief, the value of the negligently held medallions, since the day of repossession, almost two years earlier, without any efforts to market or sell same, resulting in a substantial decrease in value, the Debtor was unable to reach mutually agreeable settlement terms, ultimately resulting in the dismissal of the Chapter 11 case on February 13th, 2020. The Debtor then filed the instant Sub Chapter V Chapter 11 Bankruptcy case, in order to reach fair and equitable, feasible terms of settlement, within the context of a Sub Chapter V Chapter 11 Plan of Reorganization. Among other persisting issues in both cases, is the fact that notwithstanding a fairly determined amount to be set forth in, upon information and belief, a substantially negotiated settlement agreement between Mega Funding and the co-guarantor of the Debtor, directly affecting the joint and several debt in question, subject to both cross collaterization as well as joint and several confessions of judgment of the two guarantors, as well as the value of the above referenced, repossessed medallions, Mega Funding has consistently and adamantly refused to reflect same in the amount of filed proofs of claim in the referenced Chapter 11 Cases as well as, consequently, in the context of the resulting settlement demands. In the past months, Covid-19 has further impacted property values in the city as well as income earning potential. In a good faith effort to maximize plan feasibility, the Debtor herein, has now proposed to turn over the title and interest to his vacation home, carrying both current and future value in light of the bustling current rural real estate market, in addition to a secured, amortized, secured note against the Debtor's primary residence, with a balloon payment at the end of the term.

**Background for Cases Filed Under Subchapter V**
**A. Description and History of the Debtor's Business**
The Debtor is an individual, who prior to the above referenced repossession, operated a taxi-cab, with the referenced taxi medallion, from 1987 to the date of repossession, in November of 2018.
**B. Liquidation Analysis**
To confirm the Plan, the Court must find that all creditors who do not accept the Plan, will receive at least as much under the Plan, as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A. The debtor proposes a 100% payment to the secured lien holder, Mega Funding, for their claim in the amount $394,606.45, which will be treated in the following manner: The secured claim amount of $394,606.45, will be reduced by an amount of $100,000, representing the current value of the vacation home being surrendered in partial satisfaction of the secured claim. The remaining claim of $294,606, will be paid, at an annual interest of 3.5%, over a mortgage period of 15 years. A balloon payment of $185,053.42, will be paid at the expiration of the 15 years term, at claim maturity. Furthermore, in satisfaction of the requirements of 1129 (a)(7), after an applied credit of $440,000 for the value of the surrender of two medallions, the remaining unsecured claim of Mega Funding in the amount of $102,537.30, will be reduced by a credit of $100,000, representing the projected future value of the vacation property being surrendered. The remaining unsecured amount of $2,537.30, will be paid in a lump sum payment, on the Effective Date of the plan.
   B. Ability to make future plan payments and operate without further reorganization.

   The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.
   The Plan Proponent has provided projected financial information as Exhibit B .

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $2,500.
The final Plan payment is expected to be paid on January 2036.

Article 1: Summary
This Plan of Reorganization (the Plan) under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of Nick Mavrakis (the Debtor) as follows: to the secured lien holder, Mega Funding, for their claim in the amount $394,606.45, which will be treated as a judgment lien on the Debtor's primary residence, with an annual interest Till rate of 3.5%. The secured claim amount of $394,606.45, will be reduced by an amount of $100,000, representing the current value of the vacation home being surrendered in partial satisfaction of the secured claim.  The remaining claim of $294,606, will be paid, at an annual interest of 3.5%, over a mortgage period of 15 years.  A balloon payment of $185,053.42, will be paid at the expiration of the 15 years term, at claim maturity. (Please see Exhibit C). Furthermore, in satisfaction of the requirements of 1129 (a)(7), after an applied credit of $440,000 for the value of the surrender of two medallions, the remaining unsecured claim of Mega Funding in the amount of $102,537.30, will be reduced by a credit of $100,000, representing the projected future value of the vacation property being surrendered.  The remaining unsecured amount of $2,537.30, will be paid in a lump sum payment, on the Effective Date of the plan.

This Plan provides for:    1 class of secured claims;
                           1 class of non-priority unsecured claims.


Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.


**Article 2: Classification of Claims and Interests**

**2.01    Class 1**        (a) The secured unimpaired claim of JP Morgan Chase Bank in the amount of $34,686.43, secured by the Debtor's primary residence.

(b) The secured impaired claim of Mega Funding Corp. and New York Community Bank in the amount of $394,606.45.

Class 2 All non-priority unsecured claims allowed under § 502 of the Code. American Express National Bank, in the amount of $18, 710.79., Synchrony Bank, in the amount of $274.34., Mega Funding Corp. and New York Community Bank, the amount of $542,537.30, Nadia Lahsine, in the amount of $300,000.00.

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

**3.01 Unclassified claims**

Under section 1123(a)(1), administrative expense claims are not in classes.

3.02 Administrative expense claims

Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Administrative claims consist of the Debtor's duly retained professionals and any other administrative expenses allowed under Section 503 of the Bankruptcy Code. Administrative Claims will include the fees and expenses of the Debtor's Counsel, Alla Kachan, Esq., in the approximate amount of $5,000.00 through confirmation which constitutes the full pre- petition retainer, as well as $5,000.00 in accumulated post -petition legal fees.

Skoufis & Company Inc. asserts a claim for the fees and expenses as accountants for the Debtor, in the total approximate amount of $2,500.00

The claims of Debtor's professionals shall be subject to final fee applications pursuant to Bankruptcy Code Section 330 and orders of the Court approving the fees and expenses as sought by this application. The fees of Sub Chapter V Trustee in approximate amount of $7,137.87. The Debtor estimates that the total administrative fees paid to professionals will equal $19,637.87.

3.03 Priority tax claims- Debtor herein does not have any priority claims.

3.04 Statutory fees -All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05 Prospective quarterly fees- There are no quarterly fees applicable under Sub Chapter V Chapter 11.

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01 Claims and interests shall be treated as follows under this Plan:

Class 1 (a) – Shall consist of the secured, unimpaired claim of JP Morgan Chase Bank in the amount of $34,686.43. This claim will be paid in accordance with the original terms mortgage note.

4

Class 1 (b)- Shall consist of the secured impaired claim of Mega Funding Corp. and New York Community Bank in the amount of $394,606.45. as follows: The secured claim amount of $394,606.45, will be reduced by an amount of $100,000, representing the current value of the vacation home being surrendered in partial satisfaction of the secured claim. The remaining claim of $294,606, will be paid, at an annual interest of 3.5%, over a mortgage period of 15 years. A balloon payment of $185,053.42, will be paid at the expiration of the 15 years term, at claim maturity. The break-down of the present value calculation, the amortization, total payments, and balloon, are attached herein. (Please see Exhibit C).

The secured lender shall hold a first lien on the primary residence in the full amount of the secured claim. In the event of a sale, refinancing or other change in the equity value of the home, the secured lender shall receive the full amount of their secured claim, less any payments made up to that point.

Class 2- Non-priority unsecured impaired claim of American Express, in the amount of $18,710.79. This claim shall receive 100% treatment, with an interest rate of 3.5%, over the term of 60 month, in equal monthly payments of $340.38, commencing on the effective date of the plan.

Synchrony Bank, in the amount of $274.34. This claim shall receive 100% treatment, with an interest rate of 3.5%, over the term of 60 month, in equal monthly payments of $4.99, commencing on the effective date of the plan.

Mega Funding Corp.et al- $542,537.30. This claim shall receive 100% treatment, as follows: in satisfaction of the requirements of 1129 (a)(7), after an applied credit of $440,000 for the value of the surrender of two medallions, the remaining unsecured claim of Mega Funding in the amount of $102,537.30, will be reduced by a credit of $100,000, representing the projected future value of the vacation property being surrendered. The remaining unsecured amount of $2,537.30, will be paid in a lump sum payment, on the Effective Date of the plan.

The unsecured, undisputed claim of Nadia Lahsine, in the amount of $300,000.00, shall receive treatment limited to the insurance policy limits, as per the terms of a stipulation of settlement with the creditor.

### Article 5: Allowance and Disallowance of Claims
### 5.01 Disputed claim

A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection- Both the secured and unsecured proofs of claim filed by Mega Funding et al are identified as such, herein.

### 5.02 **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed.

### 5.03  **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### Article 6: Provisions for Executory Contracts and Unexpired Leases
### 6.01 Assumed executory contracts and unexpired leases

There are no assumed executory contracts or unexpired leases of this Debtor.

### Article 7: Means for Implementation of the Plan

The funds required for confirmation and the payment of claims required to be paid on the Effective Date, shall be provided by the Debtor and the Reorganized Debtor from his monthly disposable income, over 60 months, commencing on the effective date of the plan.

Furthermore, the Debtor does not anticipate retiring for the next seven years from the Effective Date of the plan. For the next seven years, the Debtor anticipates his income and expenses to remain substantially unchanged from the current earnings and expenses, as reflected in the current monthly operating reports.  Upon the expiration of the seven years and upon retirement, the Debtor and his spouse anticipate the following monthly income:

Nick Mavrakis shall receive monthly Social Security payments of $1,400.00.

Olgica Mavrakis shall receive monthly Social Security payments of $1,200.00.

### Article 8: General Provisions
### 8.01  Definitions and rules of construction

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

### 8.02  Effective date

The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

### 8.03  Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   Binding effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05   Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 Controlling effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.08 Retention of Jurisdiction

Language addressing the extent and the scope of the bankruptcy court's jurisdiction after the effective date of the plan.

**Article 9: Discharge**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(i)    imposed by this Plan; or

(ii)   excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Dated: Brooklyn, New York
     October 23, 2020                        */s/ Nick Mavrakis*
                                           Nick Mavrakis

*/s/ Alla Kachan*
Alla Kachan, Esq.
Law Offices of Alla Kachan, PC
3099 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11235
Tel.: (718)-513-3145
Fax.: (347)-342-3156