ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, New York 10020
Tel: 212-278-1000
Fax: 212-278-1733
Deborah B. Koplovitz
*Counsel to New York Community Bank*
*and Mega Funding Corp.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re | Case No.   20-41456 (CEC) |
| NICK MAVRAKIS A/K/A NICOLAOS E MAVRAKIS, | |
| Debtor. | |

## OBJECTIONS TO CONFIRMATION OF DEBTOR'S PROPOSED FOURTH AMENDED PLAN OF REORGANIZATION [DKT. 94]

NEW YORK COMMUNITY BANK ("NYCB"), as successor in interest to New York Commercial Bank and Mega Funding Corp. ("Creditor or Creditors"), by and through its counsel, Anderson Kill P.C., submits these objections to confirmation of the Debtor's proposed second amended plan of reorganization, as amended [Dkt. 94]. For the reasons set forth herein, Creditors respectfully request that the Court deny confirmation.

## PRELIMINARY STATEMEMT

1.      The fourth amended proposed plan, which is in fact the Debtor's fifth proposed plan in this case, like all the others before it, is not feasible and violates 11 U.S.C. §1129(a)(11).

2.      The fourth amended proposed plan also fails to comply with 11 U.S.C.

§1129(b)(2)(A)(iii) which mandates that  secured creditors receive the indubitable equivalent of

their secured claims.

3.      The fourth amended proposed plan fails to comply with the best interests test per

11 U.S.C. §§ 1129(a)(7) and (b)(2)(A), the proposed plan is not fair and equitable, and the

proposed plan proposes to pay unsecured creditors long before secured claims are paid.

4.      The Debtor's fourth amended proposed plan is also not confirmable and has been

made in bad faith because:

      a.    The Debtor continually ignores this Court's directives by listing Creditors'

           claims as being "disputed" and impaired despite the fact that this Court (Hon.

           Carla Craig) (i) denied the Debtor's motion objecting to the Creditors' claims.

           [Dkt 79] and (ii) additionally informed the Debtor several times that neither of

           Creditors' claims is impaired, and directed the Debtor to include *Till* interest

           for both Claim 6 and Claim 7, and include post-petition statutory interest rate

           for the judgment which forms a part of Claim 7[1] (which the Debtor still has

           not done); and

      b.    The Debtor proposes to surrender a vacation home to the Creditors in partial

           satisfaction towards Claim 7, but the Debtor's valuation for the home in the

           Debtor's liquidation analysis is more than the valuation in the petition and the

           Debtor has not submitted any appraisal to justify this difference; and

---

[1] This is not an insignificant amount as the per diem rate of post-judgment interest is $97.30 and the post-petition interest to date for Claim 7 already amounts to just under $24,000.

2

c.   Even if the Debtor could surrender this vacation home to Creditors and obtain a credit of $100,000 towards Claim 7, the Debtor attempts to take *two*-$100,000 credits for *one* piece of real property the Debtor only values as being worth $100,000. This kind of double-dipping is in bad faith, to say the least; and

d.   The Debtor disingenuously and inaccurately claims that he is proposing to pay 100% to Mega Funding for Claim 6 and 7 when in fact, he is not doing so as set forth herein.

5.      The Debtor proposes a fifteen year payment plan towards Claim 7 even though the Debtor is already 65 years old and it is unlikely that he can complete plan payments during his lifetime.

6.      Nor does the Debtor appear to have the income to support such a time frame, as he and his wife will be in retirement at that time, and their unverified, but projected combined monthly income will only be $2,600 from social security. It does not appear that the Debtor and his wife will be even able to make the (incorrect) proposed monthly plan payments of $1,322.91, let alone a higher monthly (and required) payment amount which is necessary in order to fund this plan in a time frame that will conclude before the current judgment lien expires.

7.      As to the judgment, the Debtor's proposed plan makes no provision for the fact that the initial judgment, obtained on December 14, 2018, will expire under New York Law well before the plan is completed. Debtor does not provide for extending the judgment throughout the duration of the plan, does not take into account the costs and expense that Creditors will have to incur to make motions in State Court to extend the judgment, nor does it provide for lift stay relief to the Creditors to do so. The Debtor needs to propose a plan which will be completed

3

prior to the expiration of the judgment, otherwise the risks to Creditors are unnecessarily high. The Debtor's continued refusal to remove those risks, in conjunction with the Debtor's suggestion to provide a "first lien" on the real property located at 21-21 21st Street, Astoria, New York, when in fact, there is already a first mortgage on said property held by JP Morgan Chase also mandate that this plan is not confirmable.

## **BACKGROUND**

8.      The Debtor has listed his assets as being worth $1,304,780, which includes real property located at 2121 21St Street, Astoria, New York as being valued at $1,218,740. (Dkt 1, Form 106Sum, and Schedule A/B). In the Debtor's liquidation analysis (without conceding that same is correct for the reasons set forth herein), he has listed assets in excess of $1,300,000.

9.      In conjunction with the Debtor's liquidation analysis, he lists his "vacation home" in Bainbridge, New York as being worth $100,000. [Dkt. 95].

10.      Claims, as of the date of the petition, are only in the amount of $556,128.88. [2]

11.      With pre-petition interest, that portion of Creditors' claim, for which a judgment was entered in Queens County, is in the amount of $394,606.45. Claim 7 is fully secured by the Debtor's real property, located at 2121 21st Street, Astoria, New York.  Thus, Claim 7 includes post-petition statutory interest in the amount of $97.30[3] per day, which amount the Debtor fails

---

[2] Creditor Nadia Lahsine, who has a $300,000 claim, has agreed to seek only recovery from the Debtor's insurance policy. In addition, as set forth below, Claim 7 also includes post-petition judgment interest.

[3] This amount is derived by multiplying the judgment amount times nine percent annual interest, and dividing by 365, to arrive at the per diem interest amount. At the time of the preparation of these objections, post-petition, post-judgment interest on claim 7 is $23,935.85 using the 246 days which have elapsed since the Debtor filed his petition.

to include in his plan. Thus, through the date of these objections, the amount of Claim 7 is actually $418,542.30.

12.    Creditors also have an unsecured claim, Claim 6, in the amount of $542,537.30 which represents the pre-petition amount owed on a second loan made to Jason & George Inc. which was guaranteed by the Debtor, and to which, assuming a credit of $440,000 for the value of two New York City Taxi Medallions is applied, that claim is in the amount of $102,537.30.

13.    The Debtor previously made a motion to disallow claims 6 and 7 and that motion was denied on September 8, 2020. [Dkt.79].

14.    The Debtor has been repeatedly informed by the Honorable Judge Carla Craig that given the fact that the Debtor's assets are in excess of his liabilities, and because the Judgment is oversecured, the Debtor must include payment of 100% to all creditors, *Till* interest during the life of any plan payments to Creditors, and post-petition, post-judgment interest to Creditors for Claim 7.

15.    Notably, despite the Debtor's claim that he is paying 100% to Creditors, his plan does not make such payments to Creditors. Nor has the Debtor included any post-petition judgment interest to Creditors for Claim 7 in his proposed plan.

16.    The background involving Claims 6 and 7 is as follows:

   a.  Debtor is the guarantor of two loans issued to a company known as Jason & George Inc., of which the Debtor is a 50% owner.

   b.  Jason & George Inc. is the owner of two taxi medallions, #9M96 and #9M97 (the aforementioned "Medallions"). The Debtor is <u>not</u> the owner of either of these medallions.

    c.   After Jason & George Inc. defaulted in its repayment obligations, a judgment was entered in Queens County on December 14, 2018 against the Debtor in the amount of $355,038.37 for one of the two loans which were made to Jason & George Inc. and guaranteed by the Debtor.

## OBJECTIONS TO THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION

16.    The Debtor's proposed plan is in bad faith. Despite his claims that he is proposing to pay 100% of Claims 6 and 7, he is not doing so.

17.    In his liquidation analysis, the Debtor has valued his vacation home located in Bainbridge, New York as being worth $100,000. From this same property (which does *not* serve as security for either of the Creditors' two claims) the Debtor proposes to a) "surrender" this real property to Creditors towards Claim 7, thus obtaining a "credit" of $100,000 towards that claim; **and** b) obtain *another* credit of $100,000 for this property towards Creditors' Claim 6 "representing the projected future value of the vacation property being surrendered".

18.    The Debtor cannot propose a plan which essentially permits him to two-$100,000 "credits" for a property that he himself has only valued at $100,000, nor can the Debtor obtain ia credit for "the projected future value of the vacation property".

19.    Hypothetically speaking, once surrendered, collateral is no longer a debtor's and a debtor is not entitled to any "future" earnings, income or valuation from that property.

20.    That appears to be, however, precisely what the Debtor proposes to do in this fourth amended plan of reorganization.

6

21.     In addition, the Debtor continues to fail to account to the Creditors for post-petition, post judgment interest on Claim 7, as that claim is oversecured by the Debtor's real property located at 21-21 21st Street, Astoria, New York, which property does serve as collateral for Claim 7 (unlike the Debtor's vacation home). For this additional reason, the Debtor is not proposing a 100% plan as to Claim 7.

22.     To explain, although the Debtor had been specifically directed at the last court hearing to include post-petition interest in the plan for Claim 7, the Debtor still only proposes to pay only the amount of $394,606.45 towards claim number 7, which was only the amount as of the date of the petition (March 10, 2020). The Debtor's plan still fails to take into account per diem, post-judgment interest in the amount of $97.30 (or an annual amount of $35,514.58). Accordingly, through the date of these objections, the amount which would be required to be paid to Creditors towards Claim 7 in this plan is $418,542.30[4], and the Debtor's plan does not provide for such payment.

23.     As of the date of these objections, the Debtor's proposed amortization schedule and monthly payment towards claim 7 are not correct and it is plain that the Debtor continues to disregard directives plainly put to him by a judge of this Court in bad faith.  Assuming without conceding that this 65-year old Debtor's proposal to make monthly payments over a *fifteen-year period* toward claim 7 is confirmable (which it is not as set forth herein), then the Debtor would need to pay (as of today), and assuming without conceding that the valuation of the vacation

---

[4] There have been 246 days between March 10, 2020, the date of the bankruptcy filing, and November 11, 2020, and at a daily interest rate of $97.30, there has been to date an additional amount of $23,935.85 of post-judgment interest which must be accounted for in the Debtor's plan.

home actually is $100,000, the monthly amount of **$1,430.40 would have to be paid** based on an amortization schedule of 30 years would be required (through today's date alone) and not the amount of $1,322.91 which is proposed by the Debtor, with a balloon payment of $200,088.15 after 15 years, not a balloon payment of $185,053.42. [5]

24.      Finally, the Debtor continues to list Creditors claims as "disputed", and "impaired", even though the Debtor's motion to disallow the Creditors' claims was denied by Judge Craig on this Court's docket at Number 79, and the Debtor has been directed again and again that he must provide for post-petition interest on Claim 7 and for *Till* interest during the life of any plan payments. These continued attempts demonstrate the Debtor's obvious bad faith.

25.      The Debtor's proposed plan also has feasibility issues as well.

26.      For example, there are also significant issues with the Debtor's, and his wife's cash flow.

27.      The Debtor is relying on his wife to partially fund this plan, and has for the fourth or fifth time now, willfully failed to provide demonstration that she has the means to do so.

28.      Neither the Debtor nor his wife provide any proof of their current ability to make the proposed payments (which are insufficient in any event as set forth herein), let alone that their future social security income will suffice to continue making these payments after they retire in seven years. Notably as well, the statements submitted by the Debtor and his wife as to their social security income are not credible. They should be required to submit actual statements from the social security administration demonstrating what their retirement income will be.

---

[5] And, if the Debtor were to pay 100% of Claim 7 over the life of an 8 year plan based on this schedule, the balloon payment would be $263,095.16 in the 96th month.

29.    In addition to cash flow issues, given what little disclosure the Debtor has provided, the Debtor and his wife appear to be unable to fund this plan, and it is unclear how they will meet their basic needs under the plan as proposed. This is of particular concern because if the Debtor were to actually pay 3.5% interest towards the secured claim, and include the post-petition, post-judgment interest just through today, the monthly payment is **$1,879.44** with a balloon payment of $272,771.22 to be paid at the end of the 15 year term (see Exhibit "A" hereto). Notably, at that time, the Debtor will be 80 years old, and the Judgment will have long since expired, as the Debtor makes no provision in the plan to protect the security interest the Creditors have for Claim 7 during the life of the proposed 15-year plan, which are additional reasons to deny confirmation as set forth herein.

30.    Given the Debtor's financial disclosures to date, the Debtor is not able to make this payment and the payments to the unsecured creditors, and still meet his daily needs during retirement (or even before retirement) under the scenario proposed by the Debtor. The Debtor's own projected profit statement only indicates that there is approximately $2,500 of assets available per month for five years, and per the amortization schedule attached hereto, he needs to pay nearly $1,900 a month towards Claim 7 alone. It does not appear that the Debtor has sufficient income to fund his plan for seven years, let alone for eight additional years and the Debtor has failed to submit any proof of any alleged social security income to either him or his wife.

31.    Accordingly, the Debtor's plan is not feasible and the case should be converted to Chapter 7 as requested in the Creditors' motion to convert. If the case is converted, given the liquidation analysis the Debtor provided, the Debtor will still have over $800,000 cash in hand after all claims are paid and the property is sold. And, given the value of the Debtor's vacation

9

home, it is likely that he will have even more assets remaining, as it appears that home alone is worth over $200,000.

32.     The proposed amended plan also fails to comply with 11 U.S.C. §1129(b)(2)(A)(iii) which mandates that  secured creditors receive the indubitable equivalent of their secured claims.

33.     Whether a plan provides a secured creditor with the indubitable equivalent of its claim is a mixed question of law and fact. *In re Inv. Co. of The Sw., Inc.,* 341 B.R. 298, 317–18 (B.A.P. 10th Cir. 2006). "[A] secured creditor receives the indubitable equivalent of its claim only if the substituted collateral does not increase the creditor's exposure to risk." *Id*. at 319.

34.     The Debtor's proposal to provide a 15-year mortgage with a 3.5% interest rate to Creditors unquestionably increases the Creditors' exposure to risk.

35.     The Debtor is in his sixties, and it is highly unlikely that the Debtor will be able to complete the final installment payment during his lifetime, leaving the Creditors holding the bag, so to speak, as to the Debtor's own defaults.

36.     If that fact were not sufficient on its own, it is also apparent that a 15-year mortgage significantly increases the risk to the Creditors over and above the risk associated with the current judgment lien. This is particularly so because a mortgage is a monthly installment payment obligation, which must be accelerated in the event of a default, whereas a judgment is immediately enforceable against a defendant for the full amount, with 9% statutory interest rate, in the absence of an  automatic stay.

37.     The Debtor's proposal to provide a "first priority lien" is also nonsensical because there is already a first mortgage on the real property located at 21-21 21st Street, Astoria, New York, held by JP Morgan Chase. Thus, Creditors would be junior to JP Morgan Chase, and this

10

hypothetical mortgage could be foreclosed upon by JP Morgan Chase in the event the Debtor were to default on that loan.

38.     The Debtor must propose a plan which will actually provide for 100% payment for all claims, and which will be completed prior to the expiration of the judgment in December 2028, and provide for stay relief, and fees and costs to the Creditors to entitle them to extend the Judgment as of right, otherwise the risks to Creditors are unnecessarily high. However, the Debtor continues to propose such a plan, and all the while the per diem post-petition judgment interest continues to accrue.

39.     The fourth amended proposed  plan also fails to comply with 11 U.S.C. §1129(b)(2)(A)(iii) which mandates that  secured creditors receive the indubitable equivalent of their secured claims. The Debtor's attempt to surrender a vacation home to Creditors in partial satisfaction of Claim 7 is not the "indubitable equivalent" of the amount, through today of Claim 7, which is $418,542.30, not just the $394,606.45 filed as of the date of petition, as required.

40.     As to Claim 7, Creditors' fully secured claim, the Debtor's proposed amended plan also fails to meet the requirements of 11 U.S.C.§ 1191(b), which requires that the plan "not discriminate unfairly, and [be] fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." And, per 11 U.S.C. § 1191(c),  with respect to a class of secured claims, a plan is "fair and equitable" only where it meets the requirements of 11 U.S.C. § 1129(b)(2)(A).

41.     This section, and, more specifically, §§1129(b)(2)(A)(i)(I) and (II) state that a "fair and equitable" plan must provide:

> (I)     that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by

the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II)     that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.

42.    The Debtor's proposal to pay Claim 7 does not provide deferred cash payments totaling the allowed amount of Claim 7 as of the effective date of the plan. Contrary to the Debtor's statements in his proposed plan, per Exhibit "C" attached to the Debtor's plan, there is no post-judgment, post-petition statutory interest provided for in the Debtor's proposed plan and the Debtor's proposal to surrender his vacation home is not the equivalent of deferred cash payments.

43.    As the Court can see from a correct amortization schedule attached hereto as Exhibit "A" which is based on a 30 year amortization schedule at a 3.5% interest rate and takes into account the Debtor's proposal to obtain a $100,000 credit for the vacation home towards Claim 7, the Debtor's proposal does not provide the equivalent of deferred cash payments because the Debtor has failed to include post-judgment interest in that calculation.

44.    The Creditors are also not being provided any collateral on the Debtor's real property in the event of a default of this proposed plan. While the Debtor claims to provide a "first priority lien" to Creditors for Claim 7 in the Debtor's two-family property located at 21-21 21st Street, Astoria, New York, such a proposal makes no sense, because there is already a first lien on that property, which is held by JP Morgan Chase.

45.    As set forth above, given the fact that the current judgment expires on December 14, 2028 under New York law, the Debtor's proposed 15-year plan exposes them to unnecessary

12

risk, because the Judgment will expire, and the Debtor makes no provision for the Judgment to continue, or any other provision to ensure that the Creditors' security in 21-21 21st Street, Astoria, New York is protected during the life of the plan.

46.    To the extent the Debtor is proposing to provide a "mortgage" (a second mortgage) secured by 21-21 21st Street, Astoria, New York, this is not a reasonable or confirmable proposal, because a mortgage would have to be accelerated in the event of a default or the inability of the Debtor to continue to make payments. Nor does the Debtor propose to consent to a Court order on a 10-year basis under New York law, extending the Judgment, nor does the Debtor propose to pay for the Creditors' legal fees and costs to obtain such a court order. No such provision is made in this proposed plan for either of these scenarios, let alone any stay relief to Creditors to be able to seek an extension of the judgment.

47.    The Debtor's proposition to provide a 15-year mortgage with a 3.5% interest rate to Creditors unquestionably increases the Creditors' exposure to risk as it is more likely that the Debtor will default in this repayment plan or pass away before this plan is completed given the fact that the Debtor is 65-years old and is not likely to have a 15 year life expectancy, as the current life expectancy for males in the U.S. is still 76 years.

48.    Additionally, because the Debtor's assets are greater than his total debt, the Debtor's proposed amended plan does not meet the best interests of creditors test set out in 11 U.S.C. § 1129(a)(7).

49.    The best interests test, at 11 U.S.C. § 1129(A)(7)(A)(ii), provides that a plan must ensure that a creditor "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount

13

that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title … on such date". *Id*.

50.     The Debtor's proposed amended plan which provides for an improper "surrender" of the vacation home towards Claim 7, fails to include post-petition judgment interest for that claim, and which attempts to include an improper second credit for the "future value" of the vacation home, is a proposed plan which does not provide the Creditors with the equivalent value in today's dollars of the full amount of their claims.  Therefore, the proposed plan fails the best interests test.

51.     Additionally, the best interests test is not met where an unsecured claim is paid off before a secured claim.

52.     If confirmed, this plan also appears to create a scenario where the Debtor could be permitted to obtain a discharge of his obligations prior to the payment plan being satisfied, which scenario further violates 11 U.S.C.§ 1192.

## CONCLUSION

For the reasons set forth herein, it is respectfully requested that the Court deny to the Debtor confirmation of the fourth amended plan, and grant to Creditors such further and other relief as is just.

Dated: November 11, 2020
          New York, New York

                                            ANDERSON KILL P.C.

                                            */s/      Deborah B. Koplovitz*
                                            By:     Deborah B. Koplovitz
                                            1251 Avenue of the Americas
                                            New York, New York 10020
                                            Tel: 212-278-1000
                                            Fax: 212-278-1733

14

*Counsel to NYCB and Mega Funding Corp.*

15